| | |
|---|---|
| Francis J. Manion | Mark R. Scirocco |
| *Lead Counsel for Plaintiff* | Legal Center for Defense of Life, Inc. |
| American Center for Law & Justice | Law Offices of Robert A. Scirocco |
| Post Office Box 60 | 98 Route 46, Suite 6 |
| New Hope, Kentucky 40052 | Budd Lake, NJ 07828 |
| Tel. 502-549-7020; Fax. 502-549-5252 | Tel. 973-691-1188; Fax 973-691-3353 |
| fmanion@aclj.org | mark@sciroccoesq.com |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JERYL TURCO, | : |
| | : |
|    Plaintiff, | : CASE NO. _____ |
| | : |
| V. | : |
| | : Hon. _____ |
| CITY OF ENGLEWOOD, NEW JERSEY, | : |
| | : |
|    Defendant. | : |

**VERIFIED COMPLAINT FOR DAMAGES AND**
**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Jeryl Turco, by and through her undersigned counsel, brings this Complaint against Defendant City of Englewood, New Jersey, and its officers, agents, servants, successors in office, employees, police, attorneys, and those acting in concert or participation with them, and alleges the following:

**ADDRESSES OF THE PARTIES**

1.  Plaintiff Jeryl Turco (hereafter referred to as "Plaintiff"), a resident of Wayne, New Jersey, may be contacted through her counsel, whose addresses are noted in this Complaint, so that her privacy is maintained. Defendant City of Englewood has its primary place of business at 2-10 North Van Brunt St., Englewood, NJ 07631.

## INTRODUCTION

2. This is a civil rights action brought under 42 U.S.C. § 1983 challenging the constitutionality, both on its face and as applied, of City of Englewood Ordinance #14-11 (hereafter referred to as "the Ordinance").

3. Plaintiff is a pro-life advocate who engages in peaceful First Amendment-protected activities in traditional public fora in Englewood.

4. Pursuant to the Ordinance, Plaintiff has been prohibited from entering, speaking on, distributing literature or rosaries on, or otherwise using a large section of public sidewalk—a traditional public forum for the exercise of First Amendment rights—that is located in front of an abortion clinic—Metropolitan Medical Associates, located at 40 Engle Street in Englewood (hereafter referred to as "the abortion clinic")—and a neighboring building during the clinic's business hours.

5. Conversely, individuals calling themselves "escorts" who are volunteers and agents of the abortion clinic have continued to freely use the same portion of public sidewalk to express their viewpoints concerning abortion, including through speech and activities specifically designed to counter, and drown out, Plaintiff's expression.

6. Last year, the Supreme Court of the United States unanimously held unconstitutional a law that was strikingly similar to the Ordinance in that it imposed a similar restriction on the use of public sidewalks outside of abortion clinics. *McCullen v. Coakley*, 134 S. Ct. 2518 (2014).

7. Plaintiff asks this Court to declare the Ordinance unconstitutional both on its face and as applied to her, and also seeks a permanent injunction against Defendant's enforcement of the Ordinance.

8. Plaintiff further seeks an award of nominal damages not to exceed $19.00 for the violation of her constitutional rights and an award of costs and attorneys' fees associated with this action.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367, and 42 U.S.C. § 1983.

10. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court.

11. This Court has the authority to award Plaintiff nominal damages pursuant to 42 U.S.C. § 1983 and other applicable laws, and also has the authority to award Plaintiff her costs and attorneys' fees associated with this action pursuant to 42 U.S.C. § 1988 and other applicable laws.

12. Venue is proper within this judicial district and division under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and division.

## PARTIES

13. Plaintiff, Jeryl Turco, is an adult citizen of the United States and is a resident of Wayne, New Jersey.

14. Defendant City of Englewood, New Jersey is a municipal corporation located in Bergen County that is organized and existing under the Constitution and laws of the State of New Jersey with right of succession in perpetuum.

15. Defendant is responsible for creating, adopting, implementing, and enforcing its laws, ordinances, policies, practices, and/or customs, including those set forth in this Complaint, through its officers, agents, servants, successors in office, employees, police, attorneys, and those acting in concert or participation with them.

16. At all times relevant to this action, Defendant City of Englewood was a "person" acting under color of state law as those terms are used in 42 U.S.C. § 1983.

## ALLEGATIONS OF FACT

17. A public sidewalk runs parallel to Engle Street in front of the abortion clinic and adjacent properties. An entrance/exit door is located near the westernmost end of the front of the building, while a driveway to an employee parking lot is located near the easternmost end of the front of the building.

18. Plaintiff is a Christian and a volunteer pro-life advocate. She has a deeply held religious belief that abortion takes the life of an innocent child and is, therefore, immoral.

19. Plaintiff is compelled by her conscience to express her religious views concerning abortion in traditional public forums in Englewood, including on the public sidewalk in front of the abortion clinic.

20. The public sidewalk in front of the abortion clinic is the only location where Plaintiff's activities can have an effective communicative impact on people going into or leaving the abortion clinic, which is her intended audience.

21. For the past seven and a half years, Plaintiff has regularly used the public sidewalk in front of and/or adjacent to the abortion clinic each Saturday morning to speak with individuals heading to or from the abortion clinic and to offer them literature and a rosary.

22.	Plaintiff is motivated by her faith to speak with individuals heading to and/or from the abortion clinic in a friendly, peaceful, conversational, non-confrontational manner.

23.	When using the public sidewalk near the abortion clinic, Plaintiff has been, and desires to continue to be, a sidewalk counselor who extends compassion and assistance to women who are considering, or recovering from, having an abortion.

24.	Plaintiff considers it essential to maintain a caring demeanor, a calm tone of voice, and eye contact during her exchanges with individuals heading to or from the abortion clinic. Plaintiff believes that this method of expression is a much more effective means of dissuading women from having abortions than confrontational methods like shouting.

25.	Things that Plaintiff has often said to women who are heading toward the abortion clinic include: "Would you like a rosary?," "Here is some information about fetal development," "God loves you and your baby," "We can help you," "We are praying for you," "It's never too late to change your mind," and "There is a center across the street that can help you" (referring to a crisis pregnancy center located across the street called Our Gift of Hope).

26.	Plaintiff does not consider herself to be a "protestor" or "demonstrator" when using the public sidewalk near the abortion clinic, as yelling or being confrontational or aggressive would be contrary to, and would interfere with, her intended method of advocacy.

27.	When Plaintiff uses the public sidewalk in front of the abortion clinic, she does not block or obstruct pedestrians using the sidewalk or obstruct entrance to, or exit from, the abortion clinic.

28.	In March 2014, the City of Englewood enacted Ordinance #14-11, which amended Section 307-3 of the Code of the City of Englewood to state as follows:

>	307-3	OBSTRUCTION OF HEALTH CARE FACILITIES AND TRANSITIONAL FACILITIES.

A. Definitions. As used in this section, the following terms shall have the meanings indicated:
  (1) "health care facility" – as set forth in N.J.S.A. 26:2H-2.
  (2) "transitional facility" – Community residences for the developmentally disabled and community shelters for victims of domestic violence as those terms are defined in N.J.S.A. 40:55D-66.2.

B. Within the City of Englewood, no person shall knowingly enter or remain on a public way or sidewalk adjacent to a health care facility or transitional facility within a radius of 8 feet of any portion of an entrance, exit or driveway of such facility or within the area within a rectangle created by extending the outside boundaries of any entrance, exit or driveway of such facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway. This subsection shall not apply to the following:--
  (1) persons entering or leaving such facility;
  (2) employees or agents of such facility acting within the scope of their employment;
  (3) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and
  (4) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

C. The provisions of subsection B. shall only take effect during such facility's business hours and if the area contained within the radius and rectangle described in said subsection B. is clearly marked and posted.

D. A health care facility or a person whose rights to provide or obtain health care services have been violated or interfered with by a violation of this section or any person whose rights to express their views, assemble or pray near a health care facility have been violated or interfered with may commence a civil action for equitable relief. The civil action shall be commenced either in the superior court for the county in which the conduct complained of occurred, or in the superior court for the county in which any person or entity complained of resides or has a principal place of business.

29.    Section 307-4 of the Code of the City of Englewood states as follows:

A. Any person who violates any provision of this article shall upon conviction thereof be punished by a fine not exceeding $1,000 or by imprisonment for a term not succeeding 90 days, or both.

B. Violation of any provision of this article shall be subject to the foregoing penalty and shall be subject to a minimum mandatory fine of not less than $1,000.

6

      C. A separate offense shall be deemed committed on each day during or on which a violation occurs or continues.

30. Prior to the enactment of the Ordinance, Section 307-3 of the Code of the City of Englewood made it unlawful for anyone to "intentionally interfere with, obstruct, impede, block or prevent any person having a lawful right to enter or leave a health care facility within the City of Englewood from seeking or obtaining access to or egress from such health care facility," or to "obstruct or cause the obstruction of access into or out of any health care facility" by intentionally blocking a doorway during the facility's normal hours of operations "or by obstructing any private or public driveway, walkway, parking area or street providing immediate access thereto."

31. On information and belief, prior to the enactment of the Ordinance, the City Council considered no evidence that demonstrated that existing laws were inadequate to prevent any obstruction, impeding, threats of violence, or other unlawful activities outside of the abortion clinic.

32. On information and belief, prior to the enactment of the Ordinance, former Englewood Police Chief Arthur O'Keefe told the City Council that pro-life activities near the abortion clinic did not appear to be physically threatening.

33. On information and belief, over the past five years Defendant has made no arrests for any alleged obstruction, impeding, threats, or other violations of law for activities conducted on the public sidewalk in front of the abortion clinic.

34. After the Ordinance was enacted, a series of four lines were painted on the public sidewalk in front of the abortion clinic and a neighboring property, extending across the entire width of the sidewalk from the buildings to the curb, to demarcate the designated areas as required by the Ordinance.

35. The outermost boundary of the series of painted lines begins in front of a neighboring building several feet to the west of the clinic's entrance/exit door and ends several feet past the employee driveway entrance to the east.

36. The following two photos show part of the four painted lines in front of the abortion clinic and a neighboring building:





37. During the abortion clinic's business hours, Plaintiff cannot lawfully enter or exit the small area of sidewalk located between the two innermost painted lines. Rather, she would be forced to either unlawfully cross one of the painted lines on the sidewalk or unlawfully jaywalk across Engle Street amidst busy vehicular traffic.

38. As a result of the Ordinance, Plaintiff is prohibited from entering, remaining in, or using a large expanse of public sidewalk—approximately 50 to 60 feet in length and encompassing the entire width of the sidewalk—that runs along the entire front of the abortion clinic and part of a neighboring property during the clinic's business hours.

39. Prior to the enactment of the Ordinance, women would often walk along the public sidewalk in front of nearby buildings, then in front of the abortion clinic, before entering the clinic, and would take the same route after exiting the clinic.

40. Prior to the enactment of the Ordinance, Plaintiff would often have the opportunity to hand literature and a rosary to women who were interested in receiving them, and to engage in discussions in a conversational tone with them, as they walked along the public sidewalk in front of nearby buildings and in front of the abortion clinic.

41. Plaintiff's counseling efforts have been considerably hampered due to the enactment and enforcement of the Ordinance.

42. As a result of the enactment of the Ordinance, Plaintiff's ability to engage in peaceful conversations, and to offer literature and/or a rosary to interested individuals passing by on the public sidewalk, has been significantly restricted.

43. The Ordinance compromises Plaintiff's ability to initiate the close, personal conversations that she views as essential to her sidewalk counseling and also significantly hampers Plaintiff's ability to offer literature and rosaries to individuals on the public sidewalk.

44. Since the enactment of the Ordinance, whenever Plaintiff has attempted to use public sidewalks located outside of the prohibited area in order to communicate with individuals heading to or from the abortion clinic, there have typically been two or three volunteer "escorts," acting as agents of the clinic, who freely use the area of public sidewalk located inside the outermost boundaries of the painted lines during the clinic's business hours.

45. These "escorts" use various methods to prevent Plaintiff from having any possibility of engaging in a conversational discussion with individuals heading to or from the clinic, including placing themselves as a physical barrier between the individuals and Plaintiff, singing and shouting loudly to drown out the sound of anything Plaintiff says, and trying to persuade individuals to not accept Plaintiff's literature and rosaries by saying things like "You don't need that," "Don't listen to her," or "She's lying." The "escorts" engage in these activities on the public sidewalk—including within the prohibited area—and also frequently enter and exit the abortion clinic.

46. In *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), the Supreme Court invalidated a law similar to the Ordinance under which pro-life sidewalk counselors like Plaintiff were excluded from, among other places, a 56-foot-wide expanse of public sidewalk in front of a Boston abortion clinic during the clinic's business hours. That area of public sidewalk was similar in size to the area that the Ordinance prohibits Plaintiff from entering during the abortion clinic's business hours.

47. In *McCullen*, the Massachusetts Attorney General stated in a guidance letter that the law's exemption for employees or agents acting within the scope of their employment did not allow employees or agents "to express their views about abortion or to engage in any other partisan speech within the buffer zone."

48. Conversely, on information and belief, the City of Englewood has issued no rules, policies, or guidance letters that state that the Ordinance's exemption for employees or agents acting within the scope of their employment does not allow employees or agents of the abortion clinic to express their views about abortion within buffer zones.

49. Plaintiff is unaware of any actions taken by the abortion clinic to prevent the "escorts" from continuing to speak about abortion on the public sidewalk within the outermost boundaries of the painted lines while they are acting as agents and volunteers of the clinic.

50. The abortion clinic's "escorts" often recommend to potential patients that they have someone drop them off directly in front of the front door, meaning that these individuals have less than a 15 to 20 foot walk from the street curb to the front door. The entirety of this brief walk occurs within the outermost boundaries of the painted lines, meaning that Plaintiff is prohibited from being anywhere near these individuals as they approach the front door.

51. Since the enactment of the Ordinance, a smaller percentage of individuals heading to or from the abortion clinic cross any portion of public sidewalk that Plaintiff is now lawfully permitted to use for her First Amendment activities.

52. Since the enactment of the Ordinance, Plaintiff has been prevented from engaging in a conversational discussion with the vast majority of individuals heading to or from the abortion clinic. She is now forced to try to yell over the loud voices of the multiple "escorts" who use the public sidewalk inside of the outermost painted lines to sing and speak loudly in opposition to Plaintiff's message, and who also position themselves as a physical barrier between Plaintiff and the individuals heading to or from the clinic.

53. The volume and noise level of busy Engle Street traffic further magnifies the restrictive impact of the Ordinance by forcing Plaintiff to speak much louder than she did prior to

the Ordinance's enactment in order to possibly be heard by individuals heading to or from the abortion clinic.

54. During the winter, the frequent accumulation of snow and ice on the public sidewalk near the abortion clinic decreases the area that individuals can use for walking or for speech activities. The Ordinance multiplies the restrictive impact of inclement weather by further restricting the area of public sidewalk that Plaintiff and others similarly situated may use for speech activities.

55. The Ordinance has significantly chilled the exercise of Plaintiff's constitutional rights because Plaintiff now—against her wishes—refrains from entering or using any portion of the public sidewalk that is included within the outermost painted lines during the abortion clinic's business hours due to a fear of arrest, citation, prosecution, fines, and/or imprisonment under the Ordinance.

56. Plaintiff intends to resume engaging in her constitutionally protected speech and activities on the public sidewalk located within the outermost boundaries of the painted lines should she prevail in this action.

## ALLEGATIONS OF LAW

57. While the Ordinance authorizes the filing of a civil action in superior court by any person whose rights to speak, assemble, or pray near an abortion clinic are interfered with by the Ordinance, the City lacks the authority to deprive Plaintiff of her federally protected right to seek redress in this Court.

58. Plaintiff's peaceful, non-disruptive religious expression is fully protected by the First Amendment to the United States Constitution and by Article I, ¶ 6 of the New Jersey Constitution.

59. Public sidewalks, including the sidewalks near the abortion clinic that Plaintiff desires to continue using for expression, are traditional public fora that occupy a special position for the exercise of First Amendment rights due to their historic role as sites for discussion.

60. The government's ability to restrict speech in a traditional public forum is very limited.

61. The right to peacefully distribute literature and rosaries, engage in conversations, and pray in traditional public fora is a right clearly established by the First and Fourteenth Amendments.

62. The application of the Ordinance to prohibit the exercise of First Amendment rights in a traditional public forum is injurious to Plaintiff and also unconstitutionally chills the exercise of her clearly established constitutional rights, including the rights to disseminate religious and non-religious information.

63. The Ordinance is unconstitutional on its face and as applied because it infringes on clearly established constitutional rights.

64. The Ordinance unlawfully discriminates based on the content and/or viewpoint of speech and on speaker identity.

65. The Ordinance is not a narrowly tailored restriction that furthers any significant or compelling government interest, does not leave open ample alternative channels of communication, and is not the least restrictive means of furthering any significant or compelling governmental interest.

66. The Ordinance is significantly overbroad and burdens substantially more speech than is necessary to achieve the City's asserted interests.

67. The City has chosen to forgo options that could serve its interests without significantly hindering the kind of speech in which Plaintiff wishes to resume engaging in.

68. Plaintiff has no plain, adequate, or complete remedy to redress the wrongs described in this Complaint other than by filing this action.

## FIRST CLAIM FOR RELIEF

### Freedom of Speech, First Amendment to U.S. Constitution

69. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 68 above and incorporates those allegations herein by reference.

70. The First Amendment to the United States Constitution protects, among other things, the freedom of speech.

71. As a direct and proximate result of the enactment of the Ordinance under color of state law, Plaintiff has been deprived of a clearly established constitutional right guaranteed by the First Amendment to the United States Constitution—as applied to the states and their political subdivisions by the Fourteenth Amendment—and 42 U.S.C. § 1983, in that Plaintiff has been deprived of her freedom of speech while in a traditional public forum, including, but not limited to, her right to distribute literature and rosaries and have conversations with interested individuals.

72. Wherefore, Plaintiff respectfully requests the relief set forth below in the prayer for relief.

## SECOND CLAIM FOR RELIEF

### Freedom of Assembly and Association, First Amendment to U.S. Constitution

73. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 68 above and incorporates those allegations herein by reference.

74. The First Amendment to the United States Constitution protects, among other things, the freedoms of assembly and association.

75. As a direct and proximate result of the enactment of the Ordinance under color of state law, Plaintiff has been deprived of a clearly established constitutional right guaranteed by the First Amendment to the United States Constitution—as applied to the states and their political subdivisions by the Fourteenth Amendment—and 42 U.S.C. § 1983, in that Plaintiff has been deprived of her freedom of assembly and association while in a traditional public forum.

76. Wherefore, Plaintiff respectfully requests the relief set forth below in the prayer for relief.

## THIRD CLAIM FOR RELIEF

### Freedom of Speech, Art. I, ¶ 6, New Jersey Constitution

77. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 68 above and incorporates those allegations herein by reference.

78. Article I, ¶ 6 of the New Jersey Constitution states, in relevant part, "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press."

79. As a direct and proximate result of the enactment of the Ordinance under color of state law, Plaintiff has been deprived of a clearly established constitutional right guaranteed by

Article I, ¶ 6 of the New Jersey Constitution in that Plaintiff has been deprived of her freedom of speech while in a traditional public forum, including, but not limited to, her right to distribute literature and rosaries and have conversations with interested individuals.

80. Wherefore, Plaintiff respectfully requests the relief set forth below in the prayer for relief.

## PRAYER FOR RELIEF

81. Plaintiff repeats and re-alleges all allegations made above and incorporates those allegations herein by reference, and Plaintiff respectfully asks that this Court grant her the following relief and enter final judgment against Defendant:

A. Declare that Defendant City of Englewood's Ordinance, as applied to Plaintiff, violates the freedoms protected by the First Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, ¶ 6 of the New Jersey Constitution;

B. Declare that Defendant City of Englewood's Ordinance, on its face, violates the freedoms protected by the First Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, ¶ 6 of the New Jersey Constitution or, in the alternative, declare that certain provisions of the Ordinance are unconstitutional on their face and sever those offending portions of the text from the rest of the Ordinance;

C. Permanently enjoin Defendant City of Englewood, its officers, agents, servants, successors in office, employees, police, attorneys, and those acting in concert or participation with them, with them from enforcing the Ordinance, including through arrest, charge, citation, prosecution, or fine, against Plaintiff and similarly situated persons while they use traditional public forums in Englewood;

D. Award Plaintiff nominal damages in a total amount not to exceed $19.00;

   E. Award Plaintiff her reasonable attorneys' fees and costs associated with this action; and

   F. Award Plaintiff any other and further relief that this Court deems equitable and just.

  Respectfully submitted on this 29th day of April, 2015.

  AMERICAN CENTER FOR LAW & JUSTICE

Edward L. White III\*\*  
Erik M. Zimmerman\*\*  
American Center for Law & Justice  
3001 Plymouth Road, Suite 203  
Ann Arbor, Michigan 48105  
Tel. 734-680-8007; Fax 734-680-8006  
ewhite@aclj.org; ezimmerman@aclj.org  

Mark R. Scirocco\*  
Legal Center for Defense of Life, Inc.  
Law Offices of Robert A. Scirocco  
98 Route 46, Suite 6  
Budd Lake, NJ 07828  
Tel. 973-691-1188; Fax 973-691-3353  
mark@sciroccoesq.com  

/s/ Francis J. Manion  
Francis J. Manion\*  
*Lead Attorney*  
Geoffrey R. Surtees\*\*  
American Center for Law & Justice  
Post Office Box 60  
New Hope, Kentucky 40052  
Tel. 502-549-7020; Fax 502-549-5252  
fmanion@aclj.org; gsurtees@aclj.org  

\* Admitted to D.N.J. Bar  
\*\* Pro hac vice application forthcoming  

*Counsel for Plaintiffs*

## VERIFICATION BY JERYL TURCO

I, Jeryl Turco, an adult resident of the State of New Jersey and a Plaintiff in the foregoing Complaint, state that the facts contained in paragraphs 3-5, 13, 17-27, 34-36, 39-45, and 49-56 of the foregoing complaint are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Executed on _April 25_, 2015, in _Wayne_, New Jersey.

_____
[signature: Jeryl Turco]

(The declaration electronically filed with the Court bears the scanned original signature of Jeryl Turco. The original declaration, bearing the original signature, is being retained by her counsel in this action and is available for review on request by the Court and counsel for Defendant.)