Francis J. Manion
American Center for Law & Justice
Post Office Box 60
New Hope, Kentucky 40052
Tel. 502-549-7020; Fax 502-549-5252
fmanion@aclj.org
*Counsel for Plaintiff*

Donald A. Klein
Weiner Law Group, LLP
629 Parsippany Road
P.O. Box 0438
Parsippany, New Jersey 07054
Tel. 973-403-1100; Fax 973-403-0010
dklein@weiner.law
*Counsel for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERYL TURCO, | Case No. 2:15-cv-03008 |
| Plaintiff, | |
| | Judge Susan D. Wigenton |
| v. | Magistrate Judge Leda D. Wettre |
| CITY OF ENGLEWOOD, NEW JERSEY, | |
| Defendant. | |

## <u>JOINT FINAL PRETRIAL ORDER</u>

1.    Plaintiff's Witnesses:

       Jeryl Turco

2.   Defendant's Witnesses:

     a.   Lynne Algrant

     b.   Timothy Dacey

     c.   Ashley Gray

     d.   Andrea Long

     e.   Arthur O'Keefe

     f.   Christine Taylor

*Parties have no objections to proposed witnesses. (LDW)*

3.   Plaintiff's Exhibits:

     In support of Plaintiff's case in chief, Plaintiff anticipates that she will offer the following exhibits:

a. Text of Ordinance #14-11, § 307-3 ("Obstruction of health care facilities and transitional facilities")

b. Text of Previous Englewood City Code § 307-3

c. Photo of 40 Engle St. from p. 8 of Complaint

d. Photo of 40 Engle St. from p. 9 of Complaint

e. Photo of 40 Engle St. from Doc. No. 43-7, 4/21/17, Ex. 1

f. Photo of 40 Engle St. from Doc. No. 43-7, 4/21/17, Ex. 2

g. Photo of 40 Engle St. from Doc. No. 43-7, 4/21/17, Ex. 3

h. Diagram of 40 Engle St., Exhibit P-1, Turco deposition 4/15/21

i. Diagram of 40 Engle St. prepared by James Roman, D-1, Roman dep. 4/22/21

j. Diagram of 40 Engle St. prepared by James Roman, D-2, Roman dep. 4/22/21

k. Email from L. Suffern to T. Dacey, 4/4/2014, Doc. 45-6 (2 pages)

     In response to what Plaintiff anticipates will be Defendant's proofs, Plaintiff expects to offer the following exhibits produced by Defendant during discovery:

l. Minutes Englewood Council Mtg. 10/13/2013

m. Statement of Dr. Tish for 10/13/201 Council Mtg.

n. Statement of Physicians for 11/12/2013 Council Mtg.

o. Minutes of 11/12/2013 Council Mtg.

p. Email from J. Gordon to L. Algrant (5 pages) 12/23/2013 (Ex. O of Dacey dep.)

q. Email Algrant to MMA escorts, 1/31/2014 (1 page)

r. Email Algrant to MMA escorts, 2/24/2013 (1 page) [Ex. B Prel. Inj. Mot.]

s. Def't Ans. To Interr., #10

t. Def't Ans. To Interr., #13

u. Def't. Ans. To Interr., #15

v. Def't. Ans. To Interr., #17

w. Emails Algrant, MMA, Bonnie Shapiro, Def't. Initial Disclosures ENGTUR 138-141

x. Email, A. Gray, Escort Report, to R. Kotopoulos, 1/13/2014

y. Email, A. Gray, Escort Report, to Kotopoulos, 1/19/2014

z. Email, A. Gray, Escort Report, to Kotopoulos, 1/27/2014

    aa. Email, A. Gray, Escort Report, to Kotopoulos, 2/2/2014

    bb. Email, A. Gray, Escort Report, to Kotopoulos, 2/24/2014

    cc. Email, A. Gray to L. Algrant, 12/22/2013

    dd. Email, A. Gray to L. Algrant, 12/23/2013

    ee. Email, A. Gray to L. Algrant, 1/19/2014

       Plaintiff reserves the right to introduce other documents produced by Defendant in discovery for impeachment purposes as the testimony at trial dictates.

4.    Defendant's Exhibits:

       Defendant anticipates offering the following exhibits in support of its case in chief:

    a.  City of Englewood's March 18, 2014 Buffer Zone Ordinance

    b.  City of Englewood Code § 307-3 (adopted February 1990)

    c.  October 8, 2013 City Council Work Shop Meeting

    d.  November 12, 2013 City Council Work Shop Meeting Minutes

    e.  March 18, 2014 City Council Meeting Minutes

    f.  November 30, 2013 newspaper article

    g.  March 23, 2014 newspaper article

    h.  March 27, 2014 newspaper article

    i.  January 11, 2014 Escort Report

    j.  January 18, 2014 Escort Report

k.  January 25, 2014 Escort Report

l.  February 2, 2014 Escort Report

m. February 24, 2014 Escort Report

n.  December 22, 2013 Escort Report

o.  January 19, 2014 Escort Report

p.  Photo of Plaintiff at the Site

q.  Excerpts from Plaintiff's Responses to Defendant's Interrogatories

r.  Excerpts from Plaintiff's Responses to Defendant's Requests for
    Admissions

s.  Excerpts from Defendant's Responses to Plaintiff's Interrogatories

t.  "Terms of Employment of Clinic Escorts"

u.  "Escorting for the MMA Clinic in Englewood NJ"

v.  Executive Order No. 50 issued by Governor Murphy on June 3, 2020
    regarding, among other things, outside dining during COVID.

w.  City of Englewood Resolution #136-06-09-20, 2020 dated June 9, 2020
    regarding implementation of Executive Order No. 50.

x.  March 17, 2020 Outdoor Dining Application and related documents

y.  April 14, 2021 Outdoor Dining License Application and related
    documents

z.  Buffer Zone: Snapshots from an Abortion Clinic Escort by Christine
    Taylor (2020)

aa. August 26, 2019 n.j.com Opinion piece by Andrea Long      ✗

*Parties have no objections to proposed exhibits, but reserve relevance objections to trial. (LDW)*

5

Defendant reserves the right to introduce other documents produced by plaintiff in discovery for impeachment purposes as the testimony at trial dictates.

5.   Proposed Readings from Depositions:

The parties stipulate that either party may read excerpts from the testimony of Rosemary Garrett as part of their case. Specifically, Defendant proposes to read from the following pages of Garrett's deposition: 9:8-21; 10:14-17; 11:3-5; 11:11-13; 12:11 to 13:3; 16:2-3; 17:7-8; 20:22 to 21:1; 21:5-7; 22:23 to 23:1; 24:6-15; 25:19 to 29:13; 30:4 to 32:21; 33:3-16; 34:16 to 35:6.

Plaintiff proposes to read from the following pages of Garrett's deposition: 38:17 to 39:9.

As Defendant has indicated that it intends to call as witnesses all of the individuals previously deposed in this case, Plaintiff does not intend to read deposition excerpts, except for impeachment purposes as the trial testimony may dictate, or in the event any witness becomes unavailable for trial as defined by FRCP 32 (4).

6.   Stipulations

The parties' Stipulated Facts are attached hereto as Exhibit A.

In addition, the parties entered into a Stipulation, filed with the Court on July 15, 2015, whereunder plaintiff agreed "not to claim damages in this matter in excess of $19.00 at any time in the future by amending her Complaint or otherwise." (dkt. #14).

7.   Expert Testimony:

None.

8.   Motions in Limine:

None.

9a.   Plaintiff's Legal Issues:

(1) Whether the City of Englewood's Ordinance § 307-3 ("Obstruction of health care facilities and transitional facilities"), on its face and/or as-applied, violates the free speech and assembly rights of Plaintiff, Jeryl Turco, as protected by the Free Speech Clause of the First Amendment to the U.S. Constitution and Art. I, ¶ 6 of the New Jersey State Constitution. More specifically:

> (a) Whether the Ordinance, on its face and/or as-applied, impermissibly burdens Plaintiff's ability to communicate to patients of the abortion clinic located at 40 Engle Street ("Metropolitan Medical Associates") through her chosen means of sharing her constitutionally protected message.

> (b) Whether the City can meet its burden of proving the constitutionality of the Ordinance by showing that it is narrowly tailored to serve a significant government interest.

(2) Whether the City of Englewood's Ordinance § 307-3 ("Obstruction of health care facilities and transitional facilities") is substantially overbroad in violation of the First Amendment's overbreadth doctrine.

9b.  Defendant's Legal Issues:

(1)   Whether the Buffer Zone is narrowly tailored, upon application of an intermediate scrutiny standard (*i.e.*, whether the time, place, and manner restrictions imposed by the Buffer Zone Ordinance are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication).

(2)   Whether the Buffer Zone Ordinance burdens "substantially" more speech than is necessary to further the government's legitimate interests under the standards and guidelines set forth by the Third Circuit in its Opinion and Order remanding this matter,

(3)   Whether the City failed to consider less restrictive means of regulating speech in front of the MMA Clinic under the standards and guidelines set forth by the Third Circuit in its Opinion and Order remanding this matter.

(4)   Whether the Buffer Zone Ordinance, by its express terms, permits persons, including plaintiff, to walk through the Buffer Zone on the public

sidewalk or street right of way adjacent to the MMA facility "solely for the purpose of reaching a destination other than such facility".

(5)    Whether the validity of the Buffer Zone Ordinance can be dictated by a single sidewalk counselor's chosen means of communicating with patients.

(6)    Whether the Buffer Zone Ordinance is to be applied in accordance with State COVID guidelines and requirements and in accordance with municipality-wide COVID guidelines and requirements established in accordance therewith.

(7)    Whether the Buffer Zone Ordinance is overbroad under the standards and guidelines set forth by the Third Circuit in its Opinion and Order remanding this matter.

10.    Trial Counsel for the Parties:

A.    Francis J. Manion for Plaintiff Jeryl Turco

B.    Donald A. Klein for Defendant City of Englewood, New Jersey

11.    Trial Briefs to be filed and served no later than _1/31/22_ .

12.    Non-jury trial currently scheduled for _2/23/22_

DATED:  _December 8_, 2021          _Leda Dunn Wettre_
                                    LEDA DUNN WETTRE, U.S.M.J.

We hereby consent to the form and entry of the within Joint Final Pretrial Order.

*There shall be no amendments or modifications of the terms of this Order absent a demonstration of manifest injustice.*

/s/ Francis J. Manion
Francis J. Manion
*Counsel for Plaintiff*
DATED: December 3, 2021

/s/ Donald A. Klein
Donald A. Klein
*Counsel for Defendant*
DATED: December 3, 2021

## (EXHIBIT A)

## PARTIES' STIPULATION OF UNDISPUTED FACTS

### Undisputed Facts Taken from the Third Circuit Opinion

1.     In March 2014, the City Council of Englewood amended its ordinances to address aggressive antiabortion protests that had been regularly occurring outside of the Metropolitan Medical Associates ("MMA" or "the clinic") – a health clinic that provided reproductive health services, including abortions, to women.

2.     This dispute arises against a background that included "militant activists and aggressive protestors" beginning to gather outside the facility in late 2013.

3.     Many of these protestors were associated with an evangelical ministry called the Bread of Life.

4.     The Bread of Life had ties to other radical antiabortion organizations including those which support violent reprisal against abortion providers.

5.     The Bread of Life protestors engaged in extremely aggressive, loud, intimidating, and harassing behavior towards patients, their companions, and even other groups whose views generally aligned with the Bread of Life's antiabortion position.

6.     The issue of the Bread of Life group's activities was first presented to the Englewood City Council at its October 8, 2013, meeting. At that meeting, Dr. Bruce

Tisch, a physician at MMA, identified himself and read a prepared statement to the Council regarding "escalating incidents" at 40 Engle Street, and requested that the Council address the issue.

7.     At the November 12, 2013, Council meeting, three of the physicians employed at MMA submitted to Council separate, signed written statements complaining of Bread of Life group activities.

8.     The Chief of Police also addressed the MMA issue at the November 12, 2013, meeting, opining that current City ordinances were ambiguous and in need of revision.

9.     City Council President Algrant received from Senior Counsel for the New York City Law Department at the end of December 2013 a copy of the First Circuit's decision in McCullen v. Coakley affirming the validity of Massachusetts' buffer zone law.

10.     The new ordinance [which was adopted by the City of Englewood in March 2014] reads:

A. Definitions. As used in this section, the following terms shall have the meanings indicated:

1.   "Health care facility – as set forth in N.J.S.A. 26:2H 2.

2.   "Transitional facility" – Community residences for the developmentally disabled and community shelters for

2

victims of domestic violence as those terms are defined in N.J.S.A. 40:55D-66.2.

B. Within the City of Englewood, no person shall knowingly enter or remain on a public way or sidewalk adjacent to a health care facility or transitional facility within a radius of eight feet of any portion of an entrance, exit or driveway of such facility or within the area within a rectangle created by extending the outside boundaries of any entrance, exit or driveway of such facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway. This subsection shall not apply to the following:

1. persons entering or leaving such facility;

2. employees or agents of such facility acting within the scope of their employment

3. law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and

4. persons using the public sidewalk or street right of way adjacent to such facility solely for the purpose of reaching a destination other than such facility

C. The provisions of subsection B shall only take effect during such facility's business hours and if the area contained within the radius and rectangle described in said subsection B is clearly marked and posted.

8.     Pursuant to the Ordinance, and shortly after it was adopted in March 2014, city officials began marking out buffer zones in front of covered facilities throughout the City. In an email from the Chief of Police, Larry Suffern, to Dacey, Suffern wrote, "We have marked out buffer zones at several of the medical facilities

in town. We will continue to identify the other medical facilities and mark out buffer zones." In that same email, Suffern forwarded an email to Dacey indicating that buffer zones had been marked out at six locations within Englewood, including at 40 Engle Street.

9.     Prior to enacting the disputed ordinance, the City had increased police patrols on morning when it anticipated Bread of Life protestors would be present.

10.    The Bread of Life protestors generally gathered on Saturday mornings.

11.    Police officers present on the scene imposed informal "no go zones" where protestors could not stand.

12.    Those "no go" zones were similar to the buffer zones that were part of the Ordinance.

13.    Although the police presence temporarily eased tensions at MMA, the hostile protests and resulting problems resumed immediately after officers left the clinic.

14.    Plaintiff/Appellee Jeryl Turco was not one of the hostile or aggressive anti-abortion protestors. Rather, she refers to herself as a "sidewalk counselor".

15.    Unlike the violent and aggressive anti-abortion protestors affiliated with groups such as Bread of Life, Turco's practice was to calmly approach women entering the clinic and attempt to engage in peaceful, nonconfrontational communications. She

4

believes that such conversational interaction is far more effective than the tactics favored by the aggressive protestors.

16.     Turco routinely offered rosaries and literature about prenatal care to patients entering the clinic. She also invited the women to accompany her to a crisis pregnancy center across the street, and often attempted to reassure the women by telling them things such as: "we can help you" and "we are praying for you."

17.     Jeryl Turco would counsel patients on the public sidewalk outside MMA virtually every Saturday until December 2020.

18.     Because she has moved, Turco now intends to come to the MMA site only once a month.

19.     Turco has nothing to do with the Bread of Life group. She finds their manner of protest abhorrent and counterproductive to what she is attempting to do.

## Parties and Witnesses

### Lynne Algrant[1]

20.     Lynne Algrant became a member of the Englewood City Council in 2010 and was President of the Council from early January 2014 until December 31, 2015.

### Timothy Dacey[2]

---

[1]  Lynne Algrant was deposed on December 15, 2016.

[2]  Timothy Dacey was deposed on January 30, 2017.

5

21.     Timothy Dacey was the Englewood City Manager at the time the Buffer Zone Ordinance was adopted.

### Rosemary Garrett[3]

22.     Rosemary Garrett began sidewalk counseling outside of the MMA Clinic in 2013.

23.     Rosemary Garrett sidewalk counseled outside of the MMA Clinic both before and after the Buffer Zone Ordinance was adopted.

### Ashley Gray[4]

24.     Ashley Gray was a co-founder of the volunteer escort program at the MMA Clinic, escorted at the site, and trained other volunteer escorts.

### Andrea Long[5]

25.     Andrea Long has been a volunteer escort at the MMA Clinic since the summer of 2014.

26.     Andrea Long is currently employed by the American Civil Liberties Union of New Jersey as Donor Relations Manager.

---

[3] Rosemary Garrett was deposed on January 26, 2016.

[4] Ashley Gray was deposed on February 3, 2017.

[5] Andrea Long was deposed on April 16, 2021.

27.     Andrea Long has a B.A. in Sociology and in Music and Performance and a Master's Degree in Music and Performance from McGill University.

### Arthur O'Keefe[6]

28.     Arthur O'Keefe was a Police Officer in the City of Englewood from 1971 until he retired, as Englewood Chief of Police, in 2013.

### James Roman[7]

29.     James Roman is plaintiff's proposed architectural expert.

30.     James Roman graduated from the University of Hartford with a B.S. in Architectural Engineering Technology in May 2017 and received a Master's of Architecture from NJIT in May 2020.

31.     James Roman presently works as a Junior Architect at RSC Architects in Roseland, New Jersey.

### Christine Taylor[8]

32.     Christine Taylor has been a volunteer escort at the MMA Clinic since the summer of 2016.

---

[6] Arthur O'Keefe was deposed on January 30, 2017.

[7] James Roman was deposed on April 22, 2021.

[8] Christine Taylor was deposed on April 16, 2021.

7

33.     Christine Taylor is currently an English teacher at the Newark School of Global Studies.

34.     Christine Taylor has a B.A. in English Literature and Pan-African Studies from Drew University, a graduate degree in English Literature from National University, and a Master's Degree in Library and Information Science from Rutgers University.

### Jeryl Turco[9]

35.     Plaintiff Jeryl Turco is a sidewalk counselor who has counseled outside of the MMA Clinic since 2007.

36.     Having lived in Wayne, New Jersey when the Buffer Zone Ordinance was adopted, Jeryl Turco presently lives in Neptune, New Jersey.

37.     Jeryl Turco came to the MMA site virtually every Saturday until December 2020.

38.     Because she has moved, Turco now intends to come the MMA site only once a month.

### **The Ordinance**

39.     The City of Englewood adopted a "buffer zone" Ordinance -- Ordinance No. 14-11 -- on March 18, 2014 ("the Ordinance").

---

[9] Jeryl Turco was deposed on December 9, 2016 and April 15, 2021.

8

Case 2:15-cv-03008-SDW-LDW   Document 81   Filed 12/03/21   Page 17 of 24 PageID: 1984

40.    The Ordinance amended Section 307-3 of the Code of the City of Englewood, which was originally adopted in February 1990.

41.    Prior to the March 2014 amendment, Section 307-3 (which was entitled "Obstruction of Health Care Facilities and Transitional Facilities") read in relevant part as follows:

> Within the City of Englewood, no person shall obstruct or cause the obstruction of access into or out of any health care facility or transitional facility by intentionally blocking a doorway intended by the health care facility or transitional facility to be used by the public for access into or out of any such health care facility or transitional facility during its normal hours of operations or by obstructing any private or public driveway, walkway, parking area or street providing immediate access thereto.

> No person shall intentionally interfere with, obstruct, impede, block or prevent any person having a lawful right to enter or leave a health care facility within the City of Englewood, from seeking or obtaining access to or egress from such health care facility or traditional facility.

42.    Following the March 2014 amendment, the provisions of the February 1990 Ordinance were supplanted by the language of the March 2014 Ordinance such that Section 307-3 now reads in relevant part as follows:

> Within the City of Englewood, no person shall knowingly enter or remain on a public way or sidewalk adjacent to a health care facility or transitional facility within a radius of eight feet of any portion of an entrance, exit or driveway of such facility or within the area within a rectangle created by extending the outside boundaries of any entrance, exit or driveway of such facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway. This subsection shall not apply to the following:

9

(1)     Persons entering or leaving such facility;

(2)     Employees or agents of such facility acting within the scope of their employment;

(3)     Law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and

(4)     Persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

43.     Turco's proposed architectural expert has measured the lineage at the site and found the painting of the buffer zone lines to be substantially consistent with the Buffer Zone Ordinance.

44.     Turco's proposed architectural expert has measured the distance from the building at 40 Engle Street to Engle Street to be 11 feet 10 inches, leaving at least 3 feet 10 inches between the buffer zone and the street except for the rectangular zones extending from the front door of the Clinic and the driveway.

### Historical Background

45.     The situation at the MMA site changed dramatically in late 2013 when more militant activists and aggressive protestors began coming to the site.

### The Bread of Life Protestors

46.     By Turco's own admission, prior to adoption of the buffer zone Ordinance, the Bread of Life people began to show up regularly in front of the MMA

10

Clinic and "often engaged in aggressive, loud, intimidating and, in [her] opinion, harassing behavior toward sidewalk counselors, patients and escorts."

47.     Turco admits that the Bread of Life protestors continue to be aggressive, loud, intimidating, and harassing.

48.     However, Turco never complained to the police or filed a complaint with respect to such conduct by Bread of Life protestors.

49.     Other sidewalk counselors have found the Bread of Life protestors to be aggressive, loud, intimidating, and harassing.

50.     Volunteer escorts have found the Bread of Life protestors to be aggressive, loud, intimidating and harassing.

### The Volunteer Escorts

51.     Volunteer escorts are required to sign a document entitled "Terms of Employment of Clinic Escorts", written on the letterhead of Metropolitan Surgical Associates, 40 Engle Street, Englewood, New Jersey, which states that escorts are unpaid agents of MMA, that escorts must wear clear identification indicating that they are MMA Clinic escorts, and that escorts must follow the policies and procedures set forth in a document entitled "Escorting for the MMA Clinic in Englewood NJ".

52.     "Escorting for the MMA Clinic in Englewood NJ" provides, among other things, that:

11

- "It is important to understand that, as MMA escorts, we do not make any political statements."

- "Do not respond to the protestors in any way. This means: NO eye contact, NO verbal conduct, and absolutely NO physical contact."

- "Never call out another escort's name. If protestors learn someone's name, not only do they risk direct verbal harassment and intimidation, they may also be identified by name on anti-abortion websites."

### Measures Undertaken/Considered Prior to the Buffer Zone Ordinance

53.   Police patrols of the MMA Clinic were made more frequent on Saturday mornings and on weekends when it was believed that Bread of Life protestors would be at the site.

54.   Parking regulations at the library across the street from the Clinic were more strictly enforced.

55.   However, stricter enforcement of parking regulations across the street did not prevent aggressive and violent protestors from coming to the site.

56.   Police were driving by the site more frequently and stopping to get out of the car to talk to people at the site.

57.   However, this measure by the police only deescalated the situation temporarily and periodically.

12

58.     Police tried to take information from people who complained about being harassed or assaulted at the site.

59.     Consideration was given to issuing citations for noise violations to Bread of Life protestors.

60.     The City acknowledges that no citations were ever issued nor prosecutions brought under the prior version of section 307-3 of its Disorderly Conduct Ordinance, "Obstruction of Health Care Facilities and Transitional Facilities," enacted in 1990, which prohibited individuals from blocking, obstructing, impeding, or interfering with access to health care facilities.

### Why the Buffer Zone Ordinance Was Adopted

61.     There was a perceived need by the City for an ordinance that had reasonable and objective criteria.

62.     The City believed that the interests of all parties could be balanced by creating a buffer zone that would require the maintenance of a limited distance between sidewalk counselors/protestors and clinic patients, and those assisting them, but not a distance too long that it would prevent sidewalk counselors/protestors from speaking with clinic patients.

### Turco's Ability and the Ability of Other Sidewalk Counselors to Communicate with Patients

63.     Turco admits that she has been able to talk to patients on some kind of

13

regular basis both before and after adoption of the Buffer Zone Ordinance.

64.    Other sidewalk counselors have been able to talk to patients on a regular basis both before and after adoption of the buffer zone ordinance.

65.    Turco admits that the Bread of Life protestors negatively impact her ability to communicate with patients.

66.    Turco admits that she was unhappy with the Bread of Life protestors and wanted something done about them.

### Turco's Method of Sidewalk Counseling

67.    Turco admits that unlike other sidewalk counselors who communicate with patients, she does not remain stationary.

68.    Turco admits that she can get to the buffer zone on the south side of the MMA Clinic without obstruction.

### COVID

69.    Turco admits that she only wore a mask during COVID when she was talking with patients.

### Outside Dining

70.    By Executive Order No. 150 dated June 3, 2020, Governor Murphy opened up outdoor dining in New Jersey and authorized and encouraged municipalities to allow outdoor dining both on restaurant property and on municipally-governed areas, including sidewalks.

14

71.     On June 9, 2020, the City of Englewood passed Resolution #136-06-09-20, entitled "Resolution Temporarily Waiving Certain Provisions of the City Code to Assist Local Businesses During the Covid-19 Pandemic", which authorized City officials to promulgate requirements, rules, and regulations pertaining to the application for and the use of outdoor areas (both public and private) by local business establishments for outdoor dining; authorized City officials to permit restaurants to relocate existing tables/seating or locate new tables/seating on City sidewalks, pursuant to an application process; and expressly permitted the utilization of the public right of way of the adjacent property owner for outdoor dining with the express written consent by the adjacent property owner and business.

72.     The owner of Sofia, the restaurant immediately to the south of the MMA Clinic at 36 Engle Street, applied for an Outdoor Dining License on March 17, 2020, which application included a diagram showing three tables with four chairs at each table.

73.     On June 15, 2020, the Zoning Inspector of the City of Englewood crossed out the middle table on the diagram included with Sofia's application and noted: "Two Tables".

74.     The owner of Sofia also applied for an Outdoor Dining License on April 14, 2021, which application included a diagram showing additional tables with four chairs at each table.

15

75.     On April 27, 2021, the Zoning Inspector of the City of Englewood approved Sofia's application.

76.     In connection with Sofia's application for an outdoor dining license, the owner of the MMA Clinic at 40 Engle Street provided a letter dated April 20, 2021 addressed to the City of Englewood, noting:

> We consent and permit Smoke Inc. d/b/a Sofia Restaurant ("Sofia") to utilize the sidewalk area in front our building at this location to place tables and chairs for its restaurant located at 36 Engle Street, Englewood New Jersey.

> We hope that Sofia can continue to utilize this area for the same purpose.

77.     Pursuant to Governor Murphy's Executive Order No. 150, the City of Englewood sought "to provide assistance to [food and beverage establishments and other businesses] as they reopen."

78.     This case presents a facial and as-applied challenge to Ordinance # 14-11 (hereafter "the Ordinance") adopted by the Defendant, City of Englewood, in March 2014.

16